**UNITED STATES of America, Appellee,**

v.

**Daniel PATTERSON, Defendant–Appellant.**

**Nos. 99, 100, Dockets 91–1186, 91–1187.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1991.

Decided Oct. 22, 1991.

Robert Andres, Burlington, Vt., for defendant-appellant.

Thomas D. Anderson, Asst. U.S. Atty., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty., Charles A. Caruso, First Asst. U.S. Atty., David V. Kirby, Chief, Crim. Div., on the brief), for appellee.

Before KAUFMAN, NEWMAN and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns technical questions arising in the application of the multi-count provisions of the Sentencing Guidelines. Daniel Patterson appeals from the March 25, 1991, judgments of the District Court for the District of Vermont (Franklin S. Billings, Jr., Chief Judge) convicting him of narcotics offenses and a firearms offense and sentencing him to an aggregate term of 75 months. The offenses were consolidated for sentencing. Patterson contends, among other things, that the sentencing judge erred when he treated the gun count as a drug count, determined the offense level based on the aggregate quantity of drugs involved in the drug counts and the transformed gun count, and then made an upward adjustment for possession of the gun. We affirm.

Facts

Patterson was first tried and found guilty on an indictment charging conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (1988), and two substantive counts of cocaine distribution, in violation of 21 U.S.C. § 841(a)(1) (1988). These offenses, occurring in March 1990, involved a total quantity of 37 grams of cocaine. Patterson was thereafter tried and found guilty on an indictment charging possession of a firearm by a convicted felon, in

violation of 18 U.S.C. §§ 922(g), 924(a)(2) (1988). This offense, which occurred in April 1989, was based on an episode in which Patterson was stopped for speeding on Interstate 91 in Brattleboro, Vermont, and found to be in possession of a loaded 9 mm. pistol. Evidence at the firearm trial established that Patterson was driving to New Haven to purchase drugs. The pistol was found under the front seat of the car Patterson was driving. A witness in the car testified that he had warned Patterson not to bring the gun, to which the defendant replied, "It's my baby. I bring it everywhere." The firearm offense was established with evidence that Patterson had been convicted of a felony in Connecticut in 1984.

The counts of the two Vermont indictments were consolidated for sentencing. The District Court determined the offense level as follows. First, the Court followed the requirements of U.S.S.G. § 2K2.1(c)(2), which instructs that where a defendant possesses a firearm in connection with the commission or attempted commission of another offense, the sentencing judge is to apply specified offense levels depending on the nature of the firearm violation *or the guideline for the offense committed or attempted,* if the object offense guideline yields an offense level higher than the level for the firearm offense.[1] Chief Judge Billings then accepted the determination of the Probation Department that Patterson was planning to purchase between one and two ounces of cocaine on his trip to New Haven. Since the drug offense guideline for this quantity, § 2D1.1(c), provided a higher offense level than the gun offense guideline, he treated the gun offense as a drug offense. Grouping all the counts together pursuant to section 3D1.2(d) and aggregating the drug quantities from the three narcotics counts and the firearm count, the

Court determined pursuant to section 2D1.1(c) that the base offense level for an aggregate quantity of between 50 and 100 grams of cocaine was 16. The District Judge then added two levels because a firearm was possessed during commission of the offense, § 2D1.1(b)(1), and two additional levels because of Patterson's role as a leader or supervisor of the criminal activity, § 3B1.1(c), producing an aggregate offense level of 20. Patterson's criminal record placed him in Criminal History Category V, yielding a guideline range of 63 to 78 months. Chief Judge Billings imposed concurrent sentences of 75 months on each of the counts of the drug indictment and a concurrent sentence of 60 months on the one count of the gun indictment.

## Discussion

Several issues arise as a result of the guideline calculation used by the District Court. The first issue is whether the gun count was properly treated as a drug count. This step was plainly correct since the evidence showed that the gun was possessed in connection with an attempted drug transaction, and the Guidelines explicitly refer the sentencing court to the guideline for the offense committed or attempted where, as here, the object offense carries a higher offense level than that provided for the gun offense. *See* U.S.S.G. § 2K2.1(c)(1) (1987) (current version at U.S.S.G. § 2K2.1(c)(2) (1990)).

The next issue is whether the gun count, now treated as a drug count, was properly grouped with the three counts from the drug indictment. Normally, a defendant prefers to have counts placed within a single group, since the consequence is usually to have that group rated according to the highest offense level for any one count, § 3D1.3(a), which often means that an included count does not increase the offense

---

1. This provision was originally section 2K2.1(c)(1). A November 1, 1990, amendment raised the base offense levels for firearms violations in respects not relevant to this case, and altered the cross-reference to the object offense, which had directed the court to "apply the guideline in respect to such other offense or § 2X1.1 (Attempt or Conspiracy)" so that a court now applies only section 2X1.1. U.S.S.G. App. C, Amendment 189 (Nov. 1, 1989). The current cross-reference provision has been redesignated section 2K2.1(c)(2).

level, whereas placing counts in a distinct group usually results in an increase of at least one offense level, § 3D1.4. But the offense level for a group comprising drug counts is determined by the offense level appropriate for the aggregate quantity of drugs in all the counts, § 3D1.3(b). In this case, if only the three counts of the drug indictment had been placed in one group, the offense level for that group would have been 16 (14 for the aggregate quantity, plus two levels for role in the offense), and the gun count, if placed in a separate group, would have carried an offense level of 9 (under the then applicable guideline range); the combined offense level would have been 17 (16 for the highest group plus 1).

The District Court's grouping calculation was correct. The cross-reference from the gun guideline instructs the sentencing judge to use not merely the offense level applicable to drugs that were the object of a gun offense, but the "guideline" applicable to the object offense. The cross-reference thus renders applicable all aspects of the drug guideline. Moreover, the grouping guideline specifies that counts "involving substantially the same harm shall be grouped together" and provides that counts "involve substantially the same harm" when the offense level "is determined largely on the basis of ... the quantity of a substance involved...." U.S.S.G. § 3D1.2(d).

Appellant contends that he should have been sentenced separately on the drug counts and the gun count, a result he believes would have produced a sentence at level 16 on the counts of the drug indictment, with a concurrent sentence on the gun count. There are two answers to this claim. First, though the multi-count provisions probably contemplate sentencing on counts of a single indictment in the typical case, they are not limited in that manner and apply to "all the counts of which the defendant is convicted." U.S.S.G. Ch. 3, Pt. D, intro. comment. There is no reason not to apply multi-count analysis to all counts on which the defendant is to be sentenced, whether resulting from one or more indictments. Usually multi-count analysis will result in a more carefully calibrated aggregation of penalties than would result from sequential sentencing, which exposes a defendant to the risk of consecutive sentences. Second, the Guidelines encourage a judge, sentencing a defendant already sentenced on other counts, to use multi-count analysis, § 5G1.3, comment., which the District Court did in this case after consolidating the indictments for sentencing. Equally without merit is appellant's further claim that the "same course of conduct or common scheme" standard, which limits the use of drug transactions for purposes of applying the relevant conduct guideline, § 1B1.3(a)(2), applies as a limit to the drug transactions includable within a single group pursuant to section 3D1.2(d). The multiple count provisions are not subject to the same standards that apply to relevant conduct determinations.

A further, and somewhat more substantial issue, is whether, once the gun count was transformed to a drug count for guideline purposes, the two-level enhancement for possession of a gun during commission of a drug offense, § 2D1.1(b)(1), should have been added. Superficially, this is arguably double-counting, since the gun possession has already been used once to invoke the higher guideline level of the drug guideline. But not all double-counting is prohibited, see *United States v. Blakney*, 941 F.2d 114, 117–18 (2d Cir.1991) (prior conviction may be used to determine offense level and criminal history category), and the dual use of the gun possession in this case is what the Sentencing Commission intended, not an aberrant consequence of unintended duplication. The Commission wants defendants who possess guns in connection with drug offenses to have their offense behavior assessed according to the levels appropriate for drug offenses (where higher than those for gun offenses), and a drug offense is viewed as more serious when committed while in possession of a gun. The cross-reference from the gun

guideline to the drug guideline includes all adjustments appropriate to drug offenses, including the enhancement for gun possession. *See United States v. Wheelwright,* 918 F.2d 226, 228 (1st Cir.1990).

The cross-reference from the gun guideline ultimately to the drug guideline initially directs the sentencing judge to the guideline for conspiracies and attempts, § 2X1.1, which includes any adjustments "for any intended offense conduct that can be established with reasonable certainty." It was reasonably certain that Patterson would have possessed the gun in connection with the planned New Haven drug transaction. *See* U.S.S.G. § 2X1.1, comment. (n. 2) (gun possession enhancement in connection with attempted armed robbery).

Finally, it was correct to add the two-level gun enhancement to the level appropriate for the aggregate quantity of drugs from all the counts. Section 3D1.3(b) provides that the offense level for counts involving drugs is to be determined by the "aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three." Much of Chapter Two and nearly all of Parts A, B, and C of Chapter Three concern offense level enhancements.[2] Arguably, this method of using an enhancement is unfair since it accords varying significance to the amount of the gun enhancement, depending on the amount of drugs involved in all of the other counts in which a gun was not involved. For example, when the aggregate quantity of cocaine is less than 25 grams, a two-level gun enhancement for a defendant in Criminal History Category V results in a six-month increase in the minimum range (from a range of 27–33 months to a range of 33–41 months), whereas when the aggre-

gate quantity of cocaine is between 3.5 and 5 kilograms, a two-level gun enhancement for the same defendant results in an increase in the minimum range of three years (from a range of 151–188 months to a range of 188–235 months). This increase occurs even though the gun might have been possessed only in one episode involving a small quantity of drugs. But the Commission evidently has concluded that the two-level enhancement should be added to the offense level appropriate for the aggregate quantity of drugs, believing that the amount of extra punishment for possession of a gun in connection with even a single drug transaction should increase as the aggregate quantity of drugs involved in other transactions increases. The Commission staff has explicitly endorsed this method of using the gun enhancement, *see* IV U.S. Sentencing Comm., *Questions Most Frequently Asked About the Sentencing Guidelines* 26 (Question 91) (1990), and we cannot say that this view misreads the governing statute or is otherwise unwarranted.

Appellant's remaining contentions are without merit and do not warrant discussion.

The judgment of the District Court is affirmed.

---

**2.** The Commission advises a sentencing judge to "[d]etermine whether the specific offense characteristics or adjustments from Chapter Three, Parts A, B, and C apply based upon the combined offense behavior taken as a whole." U.S.S.G., § 3D1.3, comment. (n. 3). This direction recognizes that the increase resulting from some adjustments varies depending on the offense level of the aggregate offense behavior. For example, possession of a firearm in connection with thefts increases the offense level to level 7 from the level appropriate to the amount of money taken, but adds only one level if the level appropriate to the amount of money taken is more than 7. *Id.* § 2B1.1(b)(2).