**UNITED STATES of America, Appellee–Cross–Appellant,**

v.

**John GIBSON, Defendant–Appellant– Cross–Appellee.**

**Nos. 193, 313, Dockets 97–1018, 97–1068.**

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1997.

Decided Jan. 21, 1998.

Judith Lieb, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, David C. James, Assistant United States Attorney, Brooklyn, NY), for Appellee–Cross–Appellant.

Dawn M. Cardi, New York City, for Defendant–Appellant–Cross–Appellee.

Before: MINER and LEVAL, Circuit Judges, and GRIESA, District Judge.[1]

PER CURIAM:

Defendant John Gibson appeals from a judgment entered in the United States District Court for the Eastern District of New York convicting him, following a jury trial before David G. Trager, *Judge*, of obstruction of commerce by robbery and conspiracy to do the same in violation 18 U.S.C. § 1951, and use of a firearm in relation to a crime of violence in violation of 18 U.S.C § 924. Gibson was sentenced to concurrent terms of 121 months' imprisonment on the robbery and conspiracy counts, plus 60 consecutive months' imprisonment on the firearm count. Gibson contends that the district court erred (1) in excusing a juror after the beginning of deliberations and permitting the remaining eleven jurors to reach a verdict, and (2) by allowing into evidence an impermissibly suggestive photo array identification. The United States cross-appeals, arguing that the district court erred in departing downward for a career offender principally on the ground that the Career Offender Sentencing Guideline improperly double counted Gibson's prior convictions. For the reasons stated below, we disagree with Gibson's contentions but agree that the Career Offender Guideline

---

1. The Honorable Thomas P. Griesa, Chief Judge of the United States District Court for the South- ern District of New York, sitting by designation.

does not improperly double count defendant's prior convictions. We therefore affirm the conviction but remand for resentencing.

### Background

Gibson was convicted of participating with three accomplices in an armed robbery of automobiles from a parking garage in the early morning of August 23, 1991. The evidence at trial showed that Gibson gained admittance to the garage by pretending that he wanted to park his car, then menaced the attendant Wilby Wright with a gun and announced a robbery. Gibson's accomplices joined him and together they bound Wright and placed him in the trunk of a parked car. They then took five other automobiles from the garage.

The next day, Wright told the police that the robber who announced the robbery was a tall black man with short hair and a slim build. Shortly thereafter Wright returned to Jamaica, in the West Indies, where he lives. In August 1993, the FBI's liaison agent in the Western Caribbean showed two photo arrays to Wright, advising him that the photographs might or might not contain a photograph of any of the individuals involved in the robbery. Wright recognized no one from the first array, but, according to the agent, "immediately identified photograph number one in the [second] group of six pictures as the subject of the robbery." All six photos in each array portrayed black men, apparently in their twenties or thirties, with slight to moderate facial hair. The photo Wright identified was of Gibson. Gibson was arrested in July 1995, and was indicted on the charges outlined above.

Jury deliberations in Gibson's second trial (the first ended in a hung jury) began on Friday, February 2, 1996. At the end of the afternoon, the jurors were sent home for the weekend. Juror No. 10 failed to return to court on Monday morning. Another juror reported having seen her faint on the subway. The judge made contact with the juror's doctor who advised that Juror No. 10 had been hospitalized but would be released later that day. The doctor indicated that Juror No. 10 would be medically able to return to court the following day, but suggested, in view of the prevailing bitter cold weather and the juror's advanced age, that the juror herself should decide her fitness to return to deliberations. The jury was dismissed for the day.

When court convened the following day, the court advised that the deputy clerk had spoken to Juror No. 10's daughter. According to the clerk, the daughter said that her mother was "exhausted" and should "not be required to come out in this weather and return to court." Over Gibson's objection, the court excused the juror, and ordered the remaining eleven jurors to resume deliberations. The court noted the extreme cold, the juror's age and physical condition and her troubled medical history. The jury returned a guilty verdict on all counts less than an hour later.

### Discussion

#### A. The Dismissal of Juror No. 10.

■ Gibson first contends that the district court should not have excused Juror No. 10, or, alternatively, should have declared a mistrial rather than allow the remaining jurors to deliberate to a verdict. Federal Rule of Criminal Procedure 23(b) provides that even without agreement of the parties, "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court, a valid verdict may be returned by the remaining 11 jurors."

■ Complaining that Judge Trager failed to speak directly with the juror to ascertain whether and when she would be able to return, Gibson argues that Judge Trager excused Juror No. 10 without "just cause." The district judge's decision to dismiss a juror under Rule 23(b) is reviewed for abuse of discretion. *See United States v. Ruggiero,* 928 F.2d 1289, 1300 (2d Cir.1991). We interpret the Rule to provide the trial court with wide latitude to make an "informed decision" on "all kinds of problems—temporary as well as those of long duration—that may befall a juror during jury deliberations." *United States v. Reese,* 33 F.3d 166, 173 (2d Cir. 1994).

The dismissal of Juror No. 10 was clearly within the court's discretion. The judge knew that the elderly juror had collapsed in the subway, that she had been hospitalized, and that the weather was bitterly cold. He also learned that the juror had a history of illness and that her daughter requested that she not be required to return to the proceedings. This was "sufficient information to make an informed decision," *id.*, and the judge acted comfortably within his discretion.

Gibson contends further that the district court should have declared a mistrial rather than allow the eleven remaining jurors to deliberate to a verdict. Referring to a passage in the Advisory Committee Notes to the 1983 Amendment, he argues that Rule 23(b) should permit eleven-juror verdicts only to avoid lengthy and expensive retrials. When a juror is excused from deliberation following a brief trial like his, Gibson argues, the proper solution is a mistrial.

We have held that proceeding with eleven jurors is generally preferable to a mistrial. *See United States v. Stratton,* 779 F.2d 820, 831–32 (2d Cir.1985). Furthermore, the Advisory Committee Notes indicate that verdicts by fewer than eleven jurors are proper even in short trials and that this decision is confided to the discretion of the trial court. *See* Fed.R.Crim.P. 23(b) advisory committee notes. We find no error in the district court's decision to accept the verdict. *See Reese,* 33 F.3d at 173.

### B. Admission of the Photo Array Identification.

■ Gibson next claims that the district court erred in allowing the government to introduce evidence of Wilby Wright's photo array identification. He argues that the array was unduly suggestive because only Gibson's photograph depicted a man with a goatee while all the other men portrayed were clean-shaven.

This contention is frivolous. The agent who conducted the photo array identification testified that he informed Wright that facial hair and moustaches can easily be changed, and that the arrays might contain a photograph of any of the four robbers or none at all. There is thus no reason to believe that Wright's attention was improperly focussed on Gibson.

Moreover, because Gibson did not establish that Wright told police the perpetrator wore a goatee, portraying Gibson with a goatee would not be suggestive. Nor does it appear to be true that Gibson was portrayed with a goatee. A goatee is defined as "a small trim pointed or tufted beard on a man's chin." *Webster's Third New International Dictionary* 972 (1976). Gibson was rather pictured with a light, widely-dispersed beard, a moustache, and thick sideburns. Finally, Gibson's representation that all of the other men pictured in the two arrays were clean shaven is inaccurate. In fact, all twelve of the men pictured had facial hair; none was clean shaven. Gibson's argument is wholly without merit.

### C. Sentencing.

■ We turn finally to the government's contention that the district judge erred by departing downward from the Sentencing Guidelines. For the two robbery counts, the Sentencing Guidelines prescribed an offense level of 26 before adjustment under the career criminal provision. Gibson's previous convictions placed him in Criminal History Category VI. Because Gibson had been previously convicted of multiple violent crimes, he also qualified as a career criminal offender under U.S.S.G. § 4B1.1(C), enhancing his offense level to 32 and his penalty range to 210–262 months' imprisonment. The robbery statutes provide a maximum penalty of 20 years (240 months), *see* 18 U.S.C. § 1951(a), which left the district court with a sentencing range of 210 to 240 months. *See* U.S.S.G. §§ 5G1.1, 5G1.2 (limiting penalties under the Guidelines to statutory maximums). In addition, Gibson's firearm violation carried a mandatory consecutive 60 month penalty. 18 U.S.C. § 924(c)(1).

The district judge concluded that the Career Offender Guideline punished Gibson twice by enhancing both his offense level and his criminal history category. Noting Gibson's good behavior since 1991 as well as what it considered the "double bang" of the career offender provision, the court departed

downward on the criminal history axis to Criminal History Category I (instead of VI), and imposed the minimum permissible sentence in this range of 121 months. Gibson was sentenced to 60 additional months for the firearm violation. His total sentence was 181 months, or just over 15 years, rather than the minimum of 270 months, or 22 1/2 years, that would have been scheduled but for the downward departure.

 We review *de novo* the district judge's conclusion that the use of Gibson's prior convictions both to enhance the Career Offender Guideline and to add criminal history points amounted to improper double counting. *See United States v. Palmer*, 68 F.3d 52, 54 (2d Cir.1995) ("We review a district court's interpretation and application of the Sentencing Guidelines *de novo*."). Prior convictions "should be taken into account in any way specifically stated by the Guidelines unless the Guidelines provide to the contrary." *United States v. Blakney*, 941 F.2d 114, 117 (2d Cir.1991). Congress, and the Sentencing Commission acting under Congressional authority, are generally free to assign to prior convictions in the sentencing calculus whatever consequences they consider as appropriate. *See United States v. Torres–Echavarria*, 129 F.3d 692, 699 (2d Cir.1997). We interpret the Guidelines to give effect to the intent of the Sentencing Commission. *See United States v. Howard*, 998 F.2d 42, 48 (2d Cir.1993); *United States v. Patterson*, 947 F.2d 635, 637 (2d Cir.1991).

Applying these interpretive principles, we hold that the district court mistakenly concluded that U.S.S.G. § 4B1.1 impermissibly double counted Gibson's prior convictions. Section 4B1.1 clearly intends to augment both the offense level and criminal history category of defendants subject to it. After defining a "career offender," the passage provides that "[a] career offender's criminal history category in every case shall be Category VI"—the maximum—and then catalogues the offense level enhancements proper for career offenders. *See* U.S.S.G. §§ 4B1.1(A)-(G). There can thus be no doubt that § 4B1.1 is designed to enhance a career offender's sentence under both crite-

ria, and the judge below erred in concluding otherwise.

Although the district court also mentioned Gibson's recent good behavior as a partial reason for the departure, it is clear the court relied primarily on its view of double counting which we have rejected. We accordingly vacate the sentence and remand for resentencing.

*Conclusion*

For the foregoing reasons, we affirm Gibson's conviction. His sentence is vacated and the case is remanded for resentencing.