In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-4376

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY HARGROVE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 101—**Wayne R. Andersen**, *Judge.*

---

ARGUED FEBRUARY 5, 2007—DECIDED NOVEMBER 27, 2007

---

Before EASTERBROOK, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* A jury convicted former Chicago Police Sergeant Larry Hargrove of racketeering conspiracy and other crimes stemming from his participation in a robbery, extortion, and narcotics ring that targeted suspected drug dealers using the guise of legitimate police investigations. Hargrove asks us to vacate his convictions on the ground that two key categories of evidence should have been excluded: (1) tape-recorded statements made by Eddie Hicks, one of Hargrove's coconspirators, to an undercover government informant; and (2) eyewitness identifications made from a photo array Hargrove contends was unduly suggestive. We reject his arguments and affirm.

The recorded statements of Hargrove's coconspirator, Hicks, were admissible under Rule 801(d)(2)(E) of the *Federal Rules of Evidence* and were not testimonial hearsay subject to analysis under the Confrontation Clause as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 126 S. Ct. 2266 (2006). Moreover, because Hargrove had not withdrawn from the conspiracy at the time the Hicks conversations were recorded, the statements were made "during the course" of the conspiracy as required by Rule 801(d)(2)(E). Regarding the challenge to the eyewitness identifications, Hargrove failed to move to suppress this evidence before trial as required by Rule 12(b)(3)(C) of the *Federal Rules of Criminal Procedure*, and has not established good cause for relief from this waiver as Rule 12(e) requires. In any event, the photo array was not unduly suggestive.

## I. Background

While a sergeant with the Chicago Police Department ("CPD"), Larry Hargrove was part of a four-man crew that robbed suspected drug dealers. In uniform and driving unmarked cruisers, the group staged phony home raids and automobile stops and then threatened the targeted drug dealers and others on the scene with arrest, keeping any drugs, cash, or weapons they discovered. From 1992 to 1999, these robberies, thefts, and extortions netted the coconspirators tens of thousands of dollars in cash, multi-kilogram quantities of cocaine, hundreds of pounds of marijuana, and several firearms. The other members of the group were Eddie Hicks, a CPD narcotics sergeant with access to the names and addresses of suspected drug dealers, and two civilians named Lawrence Knitter and Matthew Moran.

At trial (there were two, the first ending in a mistrial) the government introduced video- and audio-taped conver-

sations between Hicks and Arthur Veal, a drug dealer who hired Hicks in late 1996 or early 1997 to recover a large quantity of marijuana that had been stolen from him. Veal began cooperating with the government in late 2000. In the taped conversations, which took place between December 2000 and January 2001, Hicks discussed various robbery plans with Veal. During some of these discussions, Hicks referred to Hargrove's role in prior robberies. During one conversation, Hicks mentioned that Hargrove continued to receive a cut of the proceeds, even though he had retired from the CPD in March 2000 and moved to Las Vegas, because he had been "there when times were tough." Over Hargrove's objection on Confrontation Clause grounds, the district court admitted Hicks's recorded statements as statements of a coconspirator under Rule 801(d)(2)(E) of the *Federal Rules of Evidence.*

The government also introduced evidence that three eyewitnesses to one of the robberies positively identified Hargrove from a photo array. The three witnesses were police officers in Alsip, Illinois, who responded to a 911 dispatch to an Alsip apartment building and found four CPD officers conducting a raid—or so it appeared. The four men were Hicks, Hargrove, Knitter, and Moran. Hicks told the Alsip officers a cover story about the "raid," and after an Alsip police dispatcher confirmed that Hicks was a Chicago police sergeant, the Alsip officers left the scene. The Internal Affairs Division of the CPD learned of the Alsip incident, however, and began its own investigation.

As part of this investigation, a CPD Internal Affairs officer showed the Alsip officers photo arrays of CPD officers in an effort to identify the officers who were at the Alsip apartment. The Alsip officers had reported that three of the men in the apartment were black and the fourth was white. One of the photo arrays contained the

photos of eleven black CPD officers, including Hargrove; three of the Alsip police officers picked Hargrove's photo out of this array. Hargrove was the only CPD officer depicted in the photo array with a beard and glasses; the other ten had varying degrees of facial hair. None of the Alsip officers, however, had told Internal Affairs investigators that any of the four men in the Alsip apartment had a beard or wore glasses. Hargrove did not move to suppress the identifications before trial as required by Rule 12(b)(3) of the *Federal Rules of Criminal Procedure*.

A jury ultimately found Hargrove guilty of four offenses: (1) racketeering conspiracy; (2) conspiracy to distribute and possess with intent to distribute cocaine and marijuana; (3) conspiracy to commit robbery and extortion; and (4) possession of a firearm in relation to a crime of violence. The district court sentenced Hargrove to 216 months' imprisonment.

## II.  Discussion

Hargrove claims the district court committed constitutional error in admitting both the Hicks-Veal recordings and the identifications by the Alsip police officers. He contends the admission of the Hicks-Veal tapes violated his Confrontation Clause right, or alternatively, were not statements of a coconspirator because by retiring and moving to Las Vegas he withdrew from the conspiracy. The identifications, he argues, were the product of an unduly suggestive photo array in violation of his right to due process.

### A.  The Hicks-Veal Recordings

Hargrove claims the Hicks-Veal recordings are inadmissible under *Crawford*, which held that the Confronta-

tion Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. Hargrove's reliance on *Crawford* is misplaced; we have previously held that *Crawford* did not affect the admissibility of coconspirator statements. *United States v. Tolliver*, 454 F.3d 660, 665 (2006); *United States v. Jenkins*, 419 F.3d 614, 618 (7th Cir. 2005). This conclusion is shared by our sister circuits. *E.g., United States v. Bridgeforth*, 441 F.3d 864, 869 n.1 (9th Cir. 2006); *United States v. Martinez*, 430 F.3d 317, 329 (6th Cir. 2005); *United States v. Delgado,* 401 F.3d 290, 299 (5th Cir. 2005); *United States v. Hendricks*, 395 F.3d 173, 183-84 (3d Cir. 2005); *United States v. Saget*, 377 F.3d 223, 224-25 (2d Cir. 2004).

*Crawford* addressed the Confrontation Clause limitations on the admission of testimonial hearsay, but the coconspirator statements made by Hicks are neither hearsay nor "testimonial" as the Supreme Court has defined that term in *Davis. Crawford*, 541 U.S. at 59; *Davis*, 126 S. Ct. at 2275. Accordingly, they need not satisfy the Confrontation Clause requirements identified in *Crawford* in order to be admissible. *See* FED. R. EVID. 801(d) (classifying coconspirator statements as nonhearsay "[a]dmissions by a party opponent"); *Davis*, 126 S. Ct. at 2275 (noting that "statements made unwittingly to a Government informant" are nontestimonial) (citation omitted).

Under Rule 801(d)(2)(E) the statements of coconspirators made "during the course and in furtherance of the conspiracy" are considered admissions by a party opponent and are not hearsay. The use of this sort of evidence does not implicate the Confrontation Clause. *Bourjaily v. United States*, 483 U.S. 171, 182 (1987); *United States v.*

*Singleton*, 125 F.3d 1097, 1107-08 (7th Cir. 1997). Despite Hargrove's suggestion to the contrary, *Crawford* and *Davis* did not undermine *Bourjaily*. *See United States v. Carson*, 455 F.3d 336, 365 n.25 (D.C. Cir. 2006); *Saget*, 377 F.3d at 229. In both *Crawford* and *Davis,* the Supreme Court specifically cited *Bourjaily*—which as here involved a coconspirator's statements made to a government informant—to illustrate a category of nontestimonial statements that falls outside the requirements of the Confrontation Clause. *See Davis*, 126 S. Ct. at 2275; *Crawford*, 541 U.S. at 58.

Hargrove argues in the alternative that Hicks's recorded statements were inadmissible because Hargrove had already withdrawn from the conspiracy when Hicks made them; that is, he claims Hicks's statements were not made "during the course" of a conspiracy between Hicks and Hargrove. FED. R. EVID. 801(d)(2)(E). Hargrove forfeited this objection by failing to raise it below, so our review is for plain error. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847 (7th Cir. 2005). There was no error. Before trial the government submitted an extensive proffer in support of the admissibility of the Hicks-Veal recordings. This and other evidence adduced at trial easily supported the conclusion that Hicks and Hargrove were part of a conspiracy to rob and extort drug dealers in the Chicago area from the early 1990s until February 2001. That Hargrove retired in March 2000 and moved to Las Vegas does not by itself mean he withdrew from the conspiracy. Inactivity alone does not constitute withdrawal; to withdraw from a conspiracy, the defendant must "terminate completely his active involvement in the conspiracy, as well as take affirmative steps to defeat or disavow the conspiracy's purpose." *United States v. Wilson*, 134 F.3d 855, 863 (7th Cir. 1998); *United States v. Williams,* 81 F.3d 1434, 1442 (7th Cir. 1996).

There is no evidence that Hargrove disavowed or took steps to defeat the conspiracy simply by moving west. To the contrary, there is evidence of frequent postretirement phone calls between Hargrove and Hicks, and a mention in one of the Hicks-Veal recordings that Hargrove was still getting a cut of the take after his move to Las Vegas. Accordingly, the admission of the Hicks-Veal recordings as statements of a coconspirator during the course of the conspiracy was not error.[1]

## B. The Photo Lineup

Hargrove also claims the photo array from which the Alsip police officers identified him was unduly suggestive. However, Hargrove never moved to suppress these identifications and did not otherwise raise this argument in the district court.[2] Motions to suppress evidence must be made before trial, FED. R. CRIM. P. 12(b)(3)(C), and failure to do so results in waiver under Rule 12(e). Rule 12(e) permits relief from waiver only for "good cause." *United States v. Johnson*, 415 F.3d 728, 730-31 (7th Cir.

---

[1] Because the recordings were properly admitted, Hargrove's tag-along claim that the government's closing argument improperly referenced inadmissible evidence—that is, the recordings—also fails.

[2] In support of his argument that he raised a due-process objection to the photo array at trial, Hargrove cites his motion for a new trial and the trial transcript at large. His motion for a new trial made no such objection (which would, in any event, have been too late); it merely argued that the out-of-court identifications were unreliable because the Alsip officers also picked photos of men not present at the apartment. The five volumes of trial transcripts (Hargrove provides no more specific citation) contain no reference to a due-process objection to the photo array.

2005). *See Davis v. United States*, 411 U.S. 233, 242 (1973) (addressing another type of challenge Rule 12 requires be made before trial) ("We believe that the necessary effect of the congressional adoption of Rule 12(b)(2) is to provide that a claim once waived pursuant to that Rule may not later be resurrected . . . in the criminal proceeding[ ] . . . in the absence of the showing of 'cause' which that Rule requires.").

We have explained that where a defendant merely neglects to make a motion that Rule 12(b)(3) requires be made before trial (as opposed to intentionally forgoing the motion), a Rule 12(e) waiver "is more akin to a forfeiture than a waiver" and will call for plain-error review *provided* the defendant can make the "good cause" showing required by Rule 12(e). *Johnson*, 415 F.3d at 730; *see also Davis v. United States*, 411 U.S. at 242-44 (discussing cause and prejudice showing as prerequisites to relief from a Rule 12 waiver in direct review and habeas contexts); *United States v. Frady*, 456 U.S. 152, 167-68 (1983) (applying the "cause and prejudice" requirements discussed in *Davis* to procedural defaults in the habeas context).

Hargrove has given us no explanation for his failure to seek suppression of this identification evidence before trial as required by Rule 12(b)(3)(C). He certainly had advance notice that the government intended to introduce these identifications because the government used this evidence during the first trial, which ended in a mistrial. Hargrove has not made the good cause showing required by Rule 12(e) for relief from the waiver; we need not move on to the question of whether he was prejudiced to the degree required in plain-error review.

But even if we did move to the next step, Hargrove has not convinced us that the district court plainly erred in admitting the identifications made by the Alsip police officers. Unduly suggestive identification procedures

violate due process when they create a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198 (1972); *United States v. Traeger*, 289 F.3d 461, 473-74 (7th Cir. 2002). Hargrove contends that because he was the only officer depicted in the photo array with a beard and glasses, his photo stood out from the others to such a significant extent that witnesses were predisposed to select it over the others. We disagree. First, his photo does not stand in such stark contrast to the others in the array, which all depict black CPD officers of similar age with short hair and some degree of facial hair. Second, the glasses and beard were not suggestive of anything given that none of the Alsip officers had told investigators that any of the four men at the apartment were bearded or wore glasses. *See United States v. Moore*, 115 F.3d 1348, 1360 (7th Cir. 1997) (rejecting a claim that a photo array was unduly suggestive because the defendant was the only person depicted with a "notched eyebrow" because only one of several eyewitnesses had described the suspect as having a distinctive eyebrow); *United States v. Gibson*, 135 F.3d 257, 260 (2d Cir. 1998) ("[B]ecause [the defendant] did not establish that [the eyewitness] told police the perpetrator wore a goatee, portraying [the defendant] with a goatee would not be suggestive."). Accordingly, the photo array was not unduly suggestive, and it was not error to admit the Alsip police officers' identifications of Hargrove.

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*