**UNITED STATES of America Appellee,**

v.

**Christian PAULINO, Defendant–Appellant.**

**No. 04–2553–CR.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 26, 2005.

Decided: March 29, 2006.

Colleen P. Cassidy, Federal Defender Division, The Legal Aid Society, New York, New York, for Defendant–Appellant.

Samidh Guha, Assistant United States Attorney (William A. Burck and Karl Metzner, Assistant United States Attorneys, on the brief), for David N. Kelley, United States Attorney for the Southern District of New York, New York, New York, for Appellee.

Before: OAKES, RAGGI, and WESLEY, Circuit Judges.

REENA RAGGI, Circuit Judge.

Defendant Christian Paulino appeals from a judgment of conviction entered on May 10, 2004, following a jury trial in the United States District Court for the Southern District of New York (Denise Cote, *Judge*) at which he was found guilty on the sole charge of possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C). Sentenced to a 96–month term of incarceration, which he is presently serving, as well as six years' supervised release and a $100 special assessment, Paulino challenges his conviction on the following grounds: (1) the district court erred (a) in admitting evidence of his father's post-arrest statements to law enforcement officials but in excluding other statements subsequently made by his father to Christian Paulino's defense attorney, and (b) in admitting evidence of Paulino's prior New York State conviction for selling crack cocaine; (2) the prosecution failed timely to disclose material, exculpatory evidence; and (3) the court erred in excusing a juror after the start of deliberations. Because we conclude that these charged errors are without merit, we hereby affirm the judgment of conviction.

## I. *Factual Background*

Christian Paulino's challenged conviction is based on a seizure of cocaine made from his bedroom closet on May 7, 2003, at which time law enforcement officers were executing an arrest warrant for his father.

### A. *The Arrest of Adolfo Paulino and the Initial Security Sweep of Apartment 3W*

In the early morning hours of May 7, 2003, a team of law enforcement officers arrived at Apartment 3W at 303 188th Street in the Bronx, New York, to execute a federal arrest warrant for the defendant's father, Adolfo Paulino. The elder Paulino was then under indictment in the District of Connecticut for his participation in a 2001 conspiracy to traffic in 120 kilograms of cocaine. Upon being admitted to the apartment by Adolfo Paulino's wife Daisy, certain officers placed Adolfo Paulino under arrest, advised him of his constitutional rights, and secured his oral and written consent to search the premises. Meanwhile, other officers conducted a se-

curity sweep of the apartment, which revealed the presence of two other persons, the defendant Christian Paulino and his sister Ada. In the bedroom where they found Christian Paulino, the officers observed in plain view on top of a dresser various items associated with drug trafficking, including a black digital scale with white residue on it, a roll of plastic sandwich bags, and a plastic package bearing a red apple symbol and containing clear plastic mini Ziploc bags.

## B. *The Hall Closet Search*

Pursuant to Adolfo Paulino's consent, the arresting officers searched a locked hall closet from which they seized approximately 367 grams of cocaine contained in plastic bags concealed in shoes and a Domino's sugar sack. The statements made by Adolfo Paulino soon after this seizure are at issue on this appeal. Specifically, Adolfo Paulino told the arresting officers that he owned the drugs at issue and that "no one else was involved in the drugs." Trial Tr. at 113. When agents asked if there were any other drugs in the house, Adolfo Paulino stated "that he had no other drugs in the apartment, that that was it." *Id.* at 113–14.

After advice of rights, Christian Paulino similarly stated that whatever was found in the hall closet belonged to his father and that he did not know of any other drugs in the apartment.

## C. *The Bedroom Searches*

Proceeding to search the rest of the apartment, the officers seized from Adolfo and Daisy Paulino's bedroom a black digital scale, cell phones, currency, and documents. Securing consent from Ada and Christian Paulino to search their bedrooms, the officers seized approximately $2,000 hidden inside a pair of pink socks in Ada's room. From the bedroom that

Christian Paulino identified as his alone, they seized the black scale with white residue seen on top of the dresser during the original security sweep, as well as another digital scale found inside the same dresser. Officers further seized the sandwich and Ziploc bags also previously seen on top of Christian's dresser, along with a piece of packaging material, and black rubber bands. Most relevant to this appeal, from underneath clothing and other household items in the bedroom's unlocked closet, officers seized a plastic shopping bag in which they found a Ziploc bag containing approximately 190 grams of cocaine. Subsequent forensics analysis would match the single fingerprint recovered from this shopping bag to Christian Paulino. Similarly, a fingerprint recovered from one of the sandwich bags found on the dresser would be matched to Christian Paulino. As a result of this second cocaine seizure, the officers placed Christian Paulino under arrest.

## II. *Discussion*

### A. *The Challenged Evidentiary Rulings*

#### 1. *The Adolfo Paulino Statements*

■ Christian Paulino submits that his Sixth Amendment right to confrontation was violated by the receipt into evidence of the statements made by his father to law enforcement officers shortly after the seizure of cocaine from the hall closet of the family residence. *See* U.S. Const. amend. VI; *Crawford v. Washington,* 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). As noted earlier, in these statements, Adolfo Paulino took full responsibility for the cocaine found in the hall closet but denied knowing of any other cocaine in the residence. Christian Paulino argues that this Sixth Amendment violation was compounded by the district court's refusal to admit—even for purposes of impeach-

ment—other statements subsequently made by Adolfo Paulino to Christian's defense counsel in which the father stated that the drugs for which his son had been arrested, *i.e.*, the drugs seized from Christian's bedroom closet, belonged to Adolfo and not Christian Paulino. *See* Von Dornum Letter to Judge Cote, Sept. 23, 2003, at 1; Fed.R.Evid. 804(b)(3), 806. Neither argument is convincing.

### a. *The District Court's Evidentiary Rulings Do Not Implicate Sixth Amendment Rights*

Preliminarily, we observe that, to the extent Christian Paulino pursues a Sixth Amendment challenge to the district court's evidentiary rulings, his argument suffers from a fundamental flaw: it assumes that Adolfo Paulino's statements to arresting officers were offered for their truth. They were not. The district court specifically charged the jury that it did "not receiv[e] that conversation for the truth," but only to allow the jury to "understand the course of events that unfolded so that you can make a judgment as to whether or not the agent has accurately described that conversation to you." Trial Tr. at 114–15; *see also United States v. Paulino*, 299 F.Supp.2d 332, 335 (S.D.N.Y.

2004) (stating, in denying Rule 33 motion for new trial, that "[t]he Court instructed the jury that this conversation between Adolfo Paulino and the agent was not being admitted for its truth, but rather to aid the jury in understanding the course of events that unfolded that day").[1] Although the record in this case indicates that the government, at times, argued to the court that the statements could be received for their truth pursuant to Federal Rule of Evidence 803(3), relating to out-of-court statements evidencing the declarant's state of mind, the trial judge did not accept that argument and, more important, ably controlled the use of the evidence, both as it was elicited from witnesses and argued in summation, to ensure that it was not used by the government for its truth.[2]

 It has long been the rule that "[s]o long as ... statements are not presented for the truth of the matter asserted, but only to establish a context ..., the defendant's Sixth Amendment rights are not transgressed." *United States v. Barone*, 913 F.2d 46, 49 (2d Cir.1990). Nothing in *Crawford v. Washington* is to the contrary. The Court there stated that "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes

**1.** Paulino did not request that the district court expand on or clarify its limiting instruction. Thus, to the extent he now complains that the instruction was somehow unclear or inadequate, we review only for plain error, *see United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Thomas*, 274 F.3d 655, 667–68 (2d Cir.2001) (*en banc*), and find none. First, on a review of the entire record, we conclude that the instruction satisfactorily ensured that the statement was not considered for its truth. *See United States v. Downing*, 297 F.3d 52, 59 (2d Cir.2002) (noting that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions"). If there was any lack of clarity in the instruction

as to the purpose for which the evidence was being received, Paulino cannot show that the alleged error "affect[ed] his substantial rights" or "seriously affect[ed] the fairness, integrity[,] or public reputation of judicial proceedings," *United States v. Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (internal quotation marks omitted), because, as we explain *infra* at 219, the other evidence against him was overwhelming, *see United States v. Singh*, 390 F.3d 168, 185 (2d Cir.2004) (concluding that defendant failed to demonstrate plain error "in light of the overwhelming evidence presented on behalf of the government").

**2.** We discuss the relevancy of the challenged statements for purposes other than their truth *infra* at 218 – 19.

other than establishing the truth of the matter asserted." *Crawford v. Washington,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354 (citing *Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)); *see United States v. Stewart,* 433 F.3d 273, 291 (2d Cir.2006) ("*Crawford* expressly confirmed that the categorical exclusion of out-of-court statements that were not subject to contemporaneous cross-examination does not extend to evidence offered for purposes other than to establish the truth of the matter asserted."); *United States v. Logan,* 419 F.3d 172, 178–79 (2d Cir.2005) (rejecting post-*Crawford* Confrontation Clause challenge to out-of-court statements offered to corroborate testimony that co-conspirators were planning to put forth a false alibi). Equally clearly established is the principle that a statement not offered to prove the truth of the matter asserted may not be impeached under Rule 806. *See United States v. Regan,* 103 F.3d 1072, 1083 (2d Cir.1997) ("We have … made clear that a district court need not allow impeachment of even a 'central figure' whose out-of-court statements were not admitted for their truth."); *see also* 5 *Weinstein's Federal Evidence* § 806.03[3] (Joseph M. McLaughlin ed., 2d ed. 2005) (noting that Rule 806 does not "permit impeachment of someone who neither takes the stand nor is quoted in a hearsay declaration").

■ Accordingly, because the challenged evidentiary rulings—with respect to both the Adolfo Paulino statements that were received in evidence and those that were not—do not implicate the Sixth Amendment right of confrontation, we review these rulings deferentially only for abuse of discretion. *See United States v. Khalil,* 214 F.3d 111, 122 (2d Cir.2000) (recognizing trial courts' broad discretion to decide evidentiary issues). To find such abuse, we must conclude that the trial

judge's evidentiary rulings were "arbitrary and irrational." *United States v. Dhinsa,* 243 F.3d 635, 649 (2d Cir.2001) (internal quotation marks omitted); *United States v. Salameh,* 152 F.3d 88, 110 (2d Cir.1998) (*per curiam*). That is not this case.

b. *The District Court Acted Within Its Discretion in Admitting Adolfo Paulino's Statements to Arresting Officers Not for Their Truth*

■■ For out-of-court statements to be received in evidence for a purpose other than their truth, the proponent must satisfy Federal Rules of Evidence 401 and 403, that is, (1) the non-hearsay purpose for which the evidence is offered must be relevant and (2) the probative value of the evidence for this non-hearsay purpose must not be outweighed by the danger of unfair prejudice. *See Ryan v. Miller,* 303 F.3d 231, 252–53 (2d Cir.2002); *United States v. Reyes,* 18 F.3d 65, 70 (2d Cir. 1994). We accord great deference to a district court in ruling as to the relevancy and unfair prejudice of proffered evidence, mindful that it "sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *Li v. Canarozzi,* 142 F.3d 83, 88 (2d Cir.1998); *United States v. Southland Corp.,* 760 F.2d 1366, 1375 (2d Cir.1985) (according "[p]articular deference … to a ruling of the trial judge with respect to relevancy" because the trial judge has "familiarity with the development of the evidence and the jury's reaction to it which an appellate court cannot equal"). Nevertheless, we have ourselves identified "[t]wo common scenarios" in which evidence offered not for its truth may appropriately be received as relevant background: (1) to " 'clarif[y] noncontroversial matters without causing unfair prejudice on significant disputed matters,' " and (2) as " 'appropriate rebuttal to initiatives launched by the defen-

dant.'" *Ryan v. Miller,* 303 F.3d at 253 (quoting *United States v. Reyes,* 18 F.3d at 70); *see also United States v. Slaughter,* 386 F.3d 401, 403 (2d Cir.2004). Both these scenarios support the district court's relevancy determination in this case.

■ As background to Christian Paulino's arrest, the government offered, without objection, undisputed evidence relating to Adolfo Paulino's May 7, 2003 arrest, his consent to a search of the family residence on that day, and the discovery of packages of cocaine in a locked hall closet. To the extent the elder Paulino made a statement taking full responsibility for the drugs discovered in his hall closet and absolving his family members for any involvement in the drugs, his statement was properly received as non-hearsay evidence because, regardless of whether its admission and its accompanying exculpation were true or not, the statement served to clarify a noncontroversial matter for the jury: Christian Paulino was *not* being charged with any crimes relating to the hall closet drugs, and those drugs were not part of the government's case against him. To this extent, Adolfo Paulino's statement was, in fact, favorable, not prejudicial, to his son.

The risk presented by this first part of Adolfo Paulino's statement—that "no one else was involved in the drugs"—was that the *defense* would construe it expansively and attempt to use it for the truth of a matter very much in controversy: Adolfo Paulino's ·sole responsibility for *all* the drugs found in his apartment on the morning of May 7, 2003. Indeed, that was precisely how the defense employed the statement in its opening to the jury. While the government first alluded to the

fact of what Adolfo Paulino had said after the discovery of the drugs in the hall closet, *see* Trial Tr. at 50 ("Adolfo Paulino, immediately took responsibility for the cocaine in the hallway closet"), it was the defense that then suggested that the father's statement, in fact, was a truthful admission of much more:

> How will you be sure that *all* of the cocaine in Adolfo Paulino's apartment belonged to him and only to him? The evidence will show you that Adolfo Paulino admitted to the police the cocaine was his. Adolfo Paulino told them no one else was involved in the cocaine; not Mrs. Paulino, not Ada, not Christian.

*Id.* at 58 (emphasis added).

Adolfo Paulino's out-of-court statement was not, however, admissible for the truth of this controverted matter. *See* Fed. R.Evid. 801(c). Thus, even though the statement was not initially propounded by the defense, once the defense signaled its intent to employ it for this inadmissible purpose, the district court acted within its discretion in allowing the government to offer the second part of Adolfo Paulino's statement in which he stated that "he had no other drugs in the apartment." Trial Tr. at 113–14; *see generally United States v. Forrester,* 60 F.3d 52, 59 (2d Cir.1995) (holding that out-of-court statement offered not for its truth may be received in evidence when it rebuts defense initiative premised on inadmissible evidence).[3] Whether true or not, this part of the statement placed Adolfo Paulino's admission in temporal context as occurring before the second drug seizure. Thus, it was relevant (1) to clarifying what was not in controversy, *i.e.,* that the hall closet drugs were not part of the evidence against Christian Pau-

---

**3.** Although defense counsel objected to Adolfo Paulino's statement when first offered by the government, in summation, as in opening, counsel attempted to use the statement to establish the truth of a controverted matter:

"But what.does no one else is involved mean? It means that no one else had any responsibility for the drugs in that apartment." Trial Tr. at 504.

lino, and (2) to rebutting the defense's suggestion that the father's acknowledgment of responsibility and his absolution of other family members encompassed all drugs seized from the apartment on May 7, 2003, specifically those subsequently seized from his son's bedroom closet. *See Ryan v. Miller*, 303 F.3d at 253.

Further, we identify no unfair prejudice from the admission of this statement as limited by the district court. Certainly, no part of Adolfo Paulino's statement inculpated his son. Moreover, the fact that, after discovery of the hall closet drugs, Christian as well as Adolfo Paulino denied the presence of any other drugs in the residence indicates that the jury would have had no difficulty following the instruction that evidence that a statement was made does not necessarily indicate its truth.

Nevertheless, even if we were to conclude that Adolfo Paulino's statements had not been sufficiently probative to warrant admission as non-hearsay evidence, Christian Paulino would not be entitled to reversal of his conviction because any such evidentiary error would properly be deemed harmless. *See United States v. Abreu*, 342 F.3d 183, 190 (2d Cir.2003) ("[W]e will not order a new trial because of an erroneous evidentiary ruling if we conclude that the error was harmless."); *United States v. Yousef*, 327 F.3d 56, 156–57 (2d Cir.2003); *see also* Fed.R.Crim.P. 52(a) ("Any error . . . that does not affect substantial rights shall be disregarded."). An evidentiary error not affecting substantial rights is harmless if we can conclude with "fair assurance" that the jury's "judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *accord United States v. Edwards*, 342 F.3d 168, 178–79 (2d Cir.2003) (collecting cases). To reach this conclusion, we are "not required to conclude that

[the error] could not have had any effect whatever." *United States v. Rea*, 958 F.2d 1206, 1220 (2d Cir.1992). Rather, we will deem an evidentiary error harmless if we can conclude that the proof at issue was "'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Id.* (quoting *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)). In this case, we can reach that conclusion because the other evidence overwhelmingly established Christian Paulino's culpability with respect to the charged crime. That evidence included: (1) Christian Paulino's admission that he alone occupied his bedroom; (2) the discovery of 190 grams of cocaine in the unlocked closet of that bedroom; (3) the discovery of drug paraphernalia in plain view in Christian Paulino's bedroom, as well as in a dresser used by him; (4) the fact that the only fingerprints found on this paraphernalia and, more important, on the plastic bag in which the cocaine package was found were Christian Paulino's; and (5) Christian Paulino's prior conviction for drug trafficking. In light of this compelling evidence of Christian Paulino's guilt, Adolfo Paulino's acceptance of sole responsibility for drugs found earlier in a hall closet, and his denial (along with that of his son) of any knowledge of other drugs in the residence, can fairly be viewed as unimportant to the jury's verdict.

Thus, because the decision to admit Adolfo Paulino's statement fell within the district court's discretion and was, even if error, harmless, we reject this part of Christian Paulino's evidentiary challenge to his conviction.

c. *The District Court Properly Denied Christian Paulino's Rule 804(b)(3) Motion to Exclude an Out–of–Court Statement by His Father*

Prior to Christian Paulino's trial, defense counsel moved pursuant to Feder-

al Rule of Evidence 804(b)(3) to offer a statement made on June 2, 2003, by Adolfo Paulino to his son's defense counsel indicating "that the drugs for which his son had been arrested were his, and not his son's." Von Dornum Letter to Judge Cote, Sept. 23, 2003, at 1. Counsel proffered that the elder Paulino was unavailable as a witness because, if called to testify at his son's trial, he would invoke his privilege against self-incrimination. *See id.* at 3. The district court denied the motion, finding that the defense had failed to adduce the requisite corroborating circumstances for admission of the statement pursuant to Rule 804(b)(3). We agree.

Rule 804(b)(3) provides an exception to the general rule against admission of a hearsay statement when a declarant is unavailable as a witness and his out-of-court statement tends to subject him to criminal liability. *See United States v. Jackson,* 335 F.3d 170, 177 (2d Cir.2003) (noting that a witness who invokes the privilege against self-incrimination is "unavailable" within the meaning of Rule 804(b)). An important caveat obtains, however, when the inculpatory statement is offered to exculpate the accused; specifically, there must be "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement." Fed.R.Evid. 804(b)(3). The burden is on the proponent of 804(b)(3) evidence to demonstrate sufficient corroboration. *See United States v. Doyle,* 130 F.3d 523, 543–44 (2d Cir.1997). To carry this burden, he must point "to evidence that corroborates both the declarant's trustworthiness and the truth of the statement." *United States v. Lumpkin,* 192 F.3d 280, 287 (2d Cir.1999); *accord United States v. Abreu,* 342 F.3d at 190. Paulino's proffer failed in both respects.

As the district court correctly observed, the circumstances at issue hardly demonstrated Adolfo Paulino's personal trustworthiness because he had "an obvious motive to lie to protect his son." Trial Tr. at 8; *see United States v. Salvador,* 820 F.2d 558, 562 (2d Cir.1987) (recognizing that a declarant who has a motive to lie for the defendant "was not clearly trustworthy"). Moreover, events relevant to Adolfo Paulino's admission undercut, rather than strengthened, even the general assumption underlying Rule 804(b)(3), *i.e.,* that a declarant would not inculpate himself in criminal conduct if it were not true. As the district court aptly noted, because the elder Paulino was already facing charges in Connecticut for trafficking in 120 kilograms of cocaine, as well as charges in New York for the 367 grams of cocaine found in his hall closet, he might reasonably have concluded "that the [inculpatory] statement he made to his son's attorney added only incrementally to the evidence against him and would be of substantial help to his son." Trial Tr. at 8. Indeed, he may not even have thought that the statement could be used against him precisely because it was made to a defense attorney: "he may have felt that the statement was privileged." *Id.*

In sum, because Christian Paulino failed to establish the corroborating circumstances required by Rule 804(b)(3), the district court correctly excluded his father's statement to defense counsel.

### 2. *Christian Paulino's Prior Cocaine Conviction*

■ Prior to trial, the government moved pursuant to Federal Rule of Evidence 404(b) to be allowed to offer three instances of Christian Paulino's prior trafficking in crack cocaine: (1) a 1999 New York State conviction for selling narcotics, (2) a 2000 state conviction for another drug sale, and (3) an April 9, 2003 arrest for the sale and possession of crack. After hearing the parties' opening statements and

much of the evidence in the case, the district court granted the motion in part, limiting the government's proof to the 2000 conviction and carefully instructing the jury that the evidence could be considered only on the issues of "the defendant's knowledge and intent" in connection with the May 7, 2003 cocaine charge. Trial Tr. at 469. Paulino challenges this ruling, arguing that he did not dispute knowledge and intent in his case, only his constructive possession of the cocaine found in his closet. Alternatively, he submits that there was insufficient similarity between his 2000 conduct and the charged crime to make the former conviction probative of knowledge and intent. Neither argument is convincing.

### a. *Knowledge and Intent Were in Dispute Both Generally and as Specifically Relevant to Constructive Possession*

Proof of uncharged crimes or bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). Nevertheless, such other-crime evidence is admissible for any other relevant purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," *id.*, provided that the probative value of this relevant purpose is not substantially outweighed by any unfair prejudice, *see* Fed. R.Evid. 403; *see also Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Mindful of these principles, this court has long adopted an "inclusionary" approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts "is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Pitre*, 960 F.2d 1112, 1118–19 (2d Cir.1992) (internal quotation marks and citation omitted); *see also United States v. Ed-*

*wards*, 342 F.3d at 176; *United States v. Tubol*, 191 F.3d 88, 95 (2d Cir.1999). Further, we accord considerable deference to a district court's decision to admit such evidence, and we will reverse only for abuse of discretion. *See United States v. Pitre*, 960 F.2d at 1119 (observing that abuse of discretion requires that "the district court acted arbitrarily and irrationally"); *United States v. Tubol*, 191 F.3d at 95.

In an effort to demonstrate such abuse, Paulino submits that his 2000 crack conviction was inadmissible because he repeatedly stated that the issues of knowledge and intent were "not really in dispute" in his case. *United States v. Colon*, 880 F.2d 650, 656 (2d Cir.1989) (internal quotation marks omitted). In opposing the government's Rule 404(b) motion, he advised the district court that his defense would not be that his possession of the charged drugs was unknowing or unintentional; his defense would be that he had never possessed the drugs at all. This court has ruled that, when a defendant "unequivocally" relies on a defense that he "did not do the charged act at all, . . . evidence of other acts is not admissible for the purpose of proving [the] intent" or knowledge with which he acted. *United States v. Tarricone*, 996 F.2d 1414, 1421–22 (2d Cir. 1993) (internal quotation marks omitted). That, however, is not this case.

First, as the district court correctly observed, Paulino did not clearly remove from the case the issue of his knowledge of the presence of cocaine in his bedroom closet. Rather, his counsel "left it ambiguous," for example, by "emphasizing that [Paulino's] fingerprints were not on the [Ziploc] bag in which the drugs were kept." Trial Tr. at 346. This strategy was hardly inadvertent. In pre-trial colloquy, counsel advised the court that the defense did not intend to take an explicit

position on knowledge before the jury. Instead, it proposed that, at the end of the case, the court could charge the jury that the elements of knowledge and intent were not in dispute. We have recognized that a defendant need not formally stipulate to knowledge and intent to remove these issues from a case and, thereby, to avoid the introduction of relevant uncharged crime evidence. *See United States v. Colon,* 880 F.2d at 659. On the other hand, a defendant may not "use ambiguity tactically," as in this case, by proposing to accept an instruction removing *mens rea* issues from consideration while at the same time attempting to insinuate doubt on the issue in the jury's mind. *Id.* In these circumstances, the district court reasonably concluded that the general *mens rea* elements of drug possession were in dispute.

 Second, even if the general knowledge and intent elements of a drug possession crime had been clearly removed from this case, because the act disputed by Paulino was his *constructive* possession of the cocaine in his closet, he necessarily raised questions as to his knowledge and intent. As this court has long recognized, a defendant's knowledge and intent are crucial to determining whether he exercised constructive possession over an item: "Constructive possession exists when a person ... *knowingly* has the power and the *intention* at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Gordils,* 982 F.2d 64, 71 (2d Cir.1992) (internal quotation marks omitted) (emphasis added); *accord United States v. Teague,* 93 F.3d 81, 84 (2d Cir.1996) (holding that, to prove possession element, government was required to adduce evidence showing that defendant "knowingly [had] the power and the intention ... to exercise dominion and control over the cocaine") (internal quotation marks omitted).

 Paulino did not propose to remove these issues of knowledge and intent from the case. Nor could he. There was, after all, no question that the charged cocaine had, in fact, been found in Paulino's bedroom closet. Nor was it disputed that Paulino had access to this unlocked closet and used it for his belongings, in short, that he had the physical power to place things in and remove them from the closet at will. Thus, his constructive possession over the cocaine in the closet depended solely on his knowledge that he had that power and his intent to exercise it with respect to the contraband. Paulino's statement to arresting officers that the bedroom was used solely by him coupled with the presence of drug paraphernalia in plain view strongly supported an inference that he had such knowledge and intent. As the Third Circuit has observed, "[w]here a person is the sole occupant of a room and has the right to exclude all others from it, it may logically be inferred that he has knowing dominion and control over objects so situated in his room that he is likely to be aware of their presence." *United States v. Bonham,* 477 F.2d 1137, 1138 (3d Cir.1973); *see United States v. Rios,* 856 F.2d 493, 496 (2d Cir.1988) (*per curiam*) (rejecting sufficiency challenge to possession charge where defendant was resident of apartment and was found in same bedroom as drug-laden suitcase and scales when police arrived). Thus, the only way that Christian Paulino could—and did—defend against the charge of constructive possession was to suggest that his father also had access to the bedroom closet; that the drugs in that closet, no less than those in the hall closet, belonged to his father; and that Christian Paulino never exercised knowing dominion or intent to control those drugs. *See United States v. Bonham,* 477 F.2d at 1138 (observing that where two persons share or

have access to room where contraband is found, jury must consider whether evidence establishes that either or both exercised knowing dominion and control over item at issue).

The district court plainly understood that Paulino's challenge to constructive possession necessarily turned on these issues of knowledge and intent. Thus, it twice instructed the jury that Christian Paulino's prior narcotics conviction could be considered only to determine "[1] whether the defendant knew the cocaine was hidden in his bedroom closet, [2] whether he intended to exercise control over it[,] and [3] whether he intended to distribute it." Trial Tr. at 469–70, 542.

In sum, we find that the trial record does not support Paulino's argument that knowledge and intent were not at issue at his trial, and we therefore reject his argument that the district court abused its discretion in entertaining 404(b) evidence for these permissible purposes.

b. *The Similarity of the Uncharged Crime*

 For uncharged crime evidence to be probative of knowledge and intent, "[t]he government must identify a similarity or connection between the two acts." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir.2002) (collecting cases); *see United States v. Edwards*, 342 F.3d at 177. In this case, the district court recognized that Paulino's 2000 conviction differed from the charged crime in that it involved crack cocaine rather than cocaine, possession rather than constructive possession, a street sale rather than possession in a residence, and a smaller quantity of contraband. Nevertheless, as the district court aptly observed, cocaine is the raw material from which crack derives. Thus, it sensibly concluded that Paulino's retail distribution of crack was probative of his knowing

and intentional constructive possession of the cocaine in his closet because the prior crack dealing, "particularly when considered in combination with the paraphernalia seized from the defendant's bedroom," indicated that Paulino's cocaine possession was part of knowing and intentional involvement in "an earlier stage in the drug trafficking process." Trial Tr. at 348. This relevancy conclusion fell within the district court's discretion.

Further, we conclude that the probative value of the 2000 conviction was not substantially outweighed by unfair prejudice. *See Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (defining "unfair prejudice" in criminal context to refer to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"). The 2000 crack sale "did not involve conduct more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir.1999); *see United States v. Baez*, 349 F.3d 90, 94 (2d Cir.2003). The government did not place any improper emphasis on the prior conviction. Certainly, it did not attempt to argue propensity. In its summation, it used the conviction only to argue defendant's knowledge. *See* Trial Tr. at 492 ("You also know that Christian Paulino knew what the substance in that closet was. Christian Paulino was convicted in 2000 of attempted sale and distribution of a controlled substance. He was familiar with substances like cocaine."). Moreover, to the extent there was any risk of unfair prejudice, the district court satisfactorily reduced that possibility with a thorough and carefully worded limiting instruction. *See United States v. Zedner*, 401 F.3d 36, 50 (2d Cir.2005).

Accordingly, we find no merit in Paulino's challenge to the district court's Rule 404(b) ruling.

### B. *The Alleged Brady Omission*

 Paulino submits that the district court erred as a matter of law in denying his motion for a new trial, *see* Fed. R.Crim.P. 33, based on the government's failure timely to comply with its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Like the district court, we conclude that there was no *Brady* violation in this case. *See United States v. Paulino*, 299 F.Supp.2d at 345.

 Under *Brady* and its progeny, " 'the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment.' " *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir.2003) (quoting *United States v. Coppa (In re United States)*, 267 F.3d 132, 139 (2d Cir.2001)). To establish a *Brady* violation, a defendant must show (1) that the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *see also United States v. Jackson*, 345 F.3d at 71; *see generally United States v. Coppa*, 267 F.3d at 140 ("[A] *Brady* violation occurs only where the government suppresses evidence that 'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.' ") (quoting *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)) (alterations in original).

Christian Paulino faults the government for failing to make prompt disclosure of a telephone conversation placed by his father's lawyer to federal prosecutors early on the morning of October 22, 2003, the day the government rested its case and the jury began its deliberations. In that conversation, Adolfo's defense counsel inquired as to whether prosecutors would consider consolidating the drug charges pending against the elder Paulino in Connecticut and New York. Counsel further raised the possibility of Adolfo Paulino pleading guilty to all the cocaine seized from his residence on May 7, 2003, an offer promptly rejected by the prosecution. *See United States v. Paulino*, 299 F.Supp.2d at 342–43. Christian Paulino asserts that the latter statement exculpates him or, at the very least, impeaches his father's May 7, 2003 admission. Accordingly, he submits that the government's delay in disclosing the plea discussion until after the jury had begun its deliberations on October 22 violated *Brady*. We disagree.

Preliminarily, we observe that, to the extent Christian Paulino submits that Adolfo's counsel's guilty plea proposal would have impeached Adolfo Paulino's May 7, 2003 admission, the argument is unconvincing because, as already discussed *supra* at [216 – 17], the May 7, 2003 statement was not offered for its truth and, therefore, is not subject to impeachment. *See United States v. Regan*, 103 F.3d at 1083. Further, as the district court observed, because the jury was specifically charged that constructive possession can be joint as well as sole, his father's October 22 plea proposal did not exculpate Christian Paulino. *See United States v. Paulino*, 299 F.Supp.2d at 346.

 More to the point, however, there was no *Brady* violation in this case because Christian Paulino, in fact, knew that his father was attempting to take responsibility for the drugs found in Christian's bedroom closet. He knew because, in June 2003, his father had made a statement to that effect to Christian's own lawyers. Moreover, Christian Paulino knew

because, the night before his father's counsel contacted government attorneys, that counsel told Christian's lawyer "that plea negotiations encompassing all of the cocaine in the apartment appeared to be a 'possibility.'" *United States v. Paulino,* 299 F.Supp.2d at 345. As this court has frequently recognized, "[e]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Gonzalez,* 110 F.3d 936, 944 (2d Cir.1997) (internal quotation marks omitted); *accord United States v. Jackson,* 345 F.3d at 73 (recognizing "an exception" to *Brady*'s disclosure obligation "where the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence") (internal quotation marks omitted). Neither the fact that Adolfo Paulino's counsel actually broached the possibility of such a plea disposition to government counsel on the morning of October 22, 2003, nor the government's rejection of that proposal constituted any new or further material exculpatory information requiring disclosure under *Brady.*

In short, it was not lack of prompt disclosure by the government that prevented Christian Paulino from putting his father's acknowledgment of culpability before the jury. Rather, it was the inability, in light of his father's invocation of Fifth Amendment rights, to proffer that acknowledgment in any form that comported with the Rules of Evidence. Accordingly, we reject Paulino's *Brady* challenge as without merit.

### C. *Excusing a Deliberating Juror*

■ Paulino appeals the district court decision to excuse a juror for ill health and to take a verdict from an eleven-member jury. He further appeals the trial court's denial of his Rule 33 motion for a new trial based on this alleged error.

■ Federal Rule of Criminal Procedure 23(b)(3) expressly states: "After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." Fed.R.Crim.P. 23(b)(3). As long as the record establishes that the district court had "sufficient information to make an informed decision," *United States v. Reese,* 33 F.3d 166, 173 (2d Cir.1994), we will review the dismissal of a juror under Rule 23(b) only for "abuse of discretion," *United States v. Gibson,* 135 F.3d 257, 259 (2d Cir.1998); *see United States v. Ruggiero,* 928 F.2d 1289, 1300 (2d Cir.1991). In this case, we conclude that the district court's decision to excuse an ill juror was sufficiently informed to fall within the broad scope of its discretion.

Jury deliberations in this case began on Wednesday afternoon, October 22, 2003, at which time two alternate jurors were dismissed. Before 8:00 a.m. the following morning, October 23, two jurors contacted the court to state that they could not participate in deliberations that day, one because she had to deal with a personal emergency relating to her automobile, the other because she was ill with a fever. *See* Trial Tr. at 545. Further inquiry by the court's deputy clerk revealed that the first juror could arrive at the courthouse in the late morning, which in fact occurred. Meanwhile, the ill juror was told to contact the court at lunchtime to report on her condition, and the jury was excused until 2:00 p.m. to afford the two absent jurors time to come to court. *See id.* at 545–47. At approximately 12:35 p.m., the ill juror advised the court that, although she felt "a little better," it was "not much better." She stated that she was still running a

fever and thought she had a stomach virus. *Id.* at 561. As a result, "she would not be able to return to court today and ... based on how she now feels, she wouldn't be able to return tomorrow either." *Id.* Twice during this conversation, the court clerk confirmed with the ill juror that she did not anticipate being able to participate in deliberations either that day or the next. The juror stated that "the earliest she would probably be able to return to participate in deliberations was Monday." *Id.* at 562.

Over defense objection, the district court excused the ill juror, finding that, based on "the series of conversations" the juror had had with court personnel, the "emphatic way" in which the juror had described her illness, as well as "her judgment about when she would be able to return," excusal was supported by good cause. *Id.* at 568. Accordingly, at approximately 2:15 p.m. on Thursday, October 23, deliberations resumed with an eleven-member jury, and approximately two hours later, that jury returned a guilty verdict. The following morning, a defense investigator ascertained that the excused juror had recovered overnight and had reported for work that day.

■■■ Paulino argues that these circumstances show that the district court was too hasty in excusing the ill juror and that, if it had waited until Friday morning, as urged by the defense, it would have been possible to proceed with a preferred twelve-person jury. Paulino cites us to no law, however, that requires, or even encourages, an appeals court to apply 20/20 hindsight to discretionary jury management decisions by district judges. As we have previously observed, Rule 23 affords trial courts "wide latitude to make an 'informed decision' on 'all kinds of problems—temporary as well as those of long duration—that may befall a juror during

jury deliberations.'" *United States v. Gibson,* 135 F.3d at 259 (quoting *United States v. Reese,* 33 F.3d at 173). Thus, the law establishes no bright-line test for determining the length of juror unavailability that constitutes good cause for excusal. "All that is needed to satisfy a prudent exercise of discretion is to be certain the trial court had sufficient information to make an informed decision." *United States v. Reese,* 33 F.3d at 173.

At the time of the challenged ruling in this case, court personnel had made repeated inquiries of the ill juror to ascertain the state of her health and, from those conversations, on Thursday, October 23, there was every reason to believe the juror would not be able to resume deliberating until the following Monday. Even if that anticipated four-day delay lacked the absolute certainty of a comparable delay in *United States v. Stratton,* 779 F.2d 820, 831 (2d Cir.1985), the available information indicated that such an extended absence was sufficiently likely to permit the district court to conclude there was good cause for excusal. As the district court explained in denying Paulino's Rule 33 motion:

> A delay of four days in the deliberations carried not only the risks identified in the case law of dulled recollection and contamination, but also the risk of losing other jurors. The ten jurors who arrived on Thursday morning had already lost one morning while an eleventh juror dealt with her car problems. In the special circumstances presented here, there was good cause to dismiss the juror who was ill and resume deliberations.

*United States v. Paulino,* 299 F.Supp.2d at 348.

Under these circumstances, we conclude that the district court acted within its discretion in excusing the ill juror pursuant to Rule 23.

### III. *Conclusion*

To summarize, we conclude: (1) the district court's challenged evidentiary rulings with respect to out-of-court statements by the defendant's father did not implicate the Sixth Amendment and fell well within its discretion (a) to admit such statements for relevant reasons other than their truth and (b) to exclude such statements when they lack the corroboration required by Federal Rule of Evidence 804; (2) admitting evidence of a prior crack conviction pursuant to Federal Rule of Evidence 404(b) on the issues of the defendant's knowledge and intent fell within the court's discretion; (3) the government did not violate its *Brady* obligations by failing promptly to disclose information already known in substance to the defense; and (4) the district court acted within its discretion in excusing a juror who became ill during deliberations. Accordingly, the judgment of conviction entered against Christian Paulino in the Southern District of New York on May 10, 2004, is hereby AFFIRMED.