*United States v. Adelekan*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of October, two thousand twenty-four.

PRESENT:
>JOSEPH F. BIANCO,
>STEVEN J. MENASHI,
>EUNICE C. LEE,
>>*Circuit Judges*.

---

UNITED STATES OF AMERICA,

>*Appellee*,

>v.

OLUWASEUN ADELEKAN, a/k/a SEALED DEFENDANT 1,

>*Defendant-Appellant*,

OLALEKAN DARAMOLA, a/k/a SEALED DEFENDANT 2, SOLOMON ABUREKHANLEN, a/k/a SEALED DEFENDANT 3, GBENGA OYENEYIN, a/k/a SEALED DEFENDANT 4, ABIOLA OLAJUMOKE, a/k/a SEALED DEFENDANT 5, TEMITOPE OMOTAYO, a/k/a SEALED DEFENDANT 6, BRYAN EADIE, a/k/a SEALED DEFENDANT 7, ALBERT LUCAS, a/k/a SEALED DEFENDANT 8, ADEMOLA ADEBOGUN, a/k/a SEALED DEFENDANT 9,

22-1232-cr

LUCAS OLOGBENLA, ADEWOLE TAYLOR, CURLTEN OTIDUBOR,

*Defendants*.

_____

FOR APPELLEE:
Rebecca T. Dell, Assistant United States Attorney (Daniel H. Wolf and James Ligtenberg, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:
Jeffrey Chabrowe, Esq., New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on May 25, 2022, is **AFFIRMED**.

Defendant-Appellant Oluwaseun Adelekan appeals from the district court's judgment of conviction, following a jury trial, on counts of conspiring to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One), conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Two), and aggravated identity theft during and in relation to the wire fraud in violation of 18 U.S.C. § 1028A(a)(1) (Count Three). Adelekan's conviction arose from his involvement in a fraudulent scheme that used email messages, text messages, telephone calls, and other means to fraudulently induce at least forty-eight businesses and individuals to wire funds to bank accounts that appeared to be legitimate—posing as romantic interests, investment opportunities, or the business partners of the victims—but were actually controlled by Adelekan

and other participants in the scheme.[1]  The district court sentenced Adelekan principally to an aggregate term of 108 months' imprisonment, to be followed by an aggregate three-year term of supervised release.  On appeal, Adelekan argues that two erroneous evidentiary rulings by the district court warrant a new trial and, in the alternative, asserts that his sentence was procedurally unreasonable.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I. Evidentiary Rulings

Adelekan contends that the district court erred in admitting at trial (1) his personal tax records for the tax years 2016 through 2019, and (2) testimony of an Internal Revenue Service ("IRS") employee who was not properly certified as an expert.  We review a district court's rulings on evidentiary issues for abuse of discretion, allowing them to "stand[] unless [they were] arbitrary and irrational." *United States v. Williams*, 930 F.3d 44, 62 (2d Cir. 2019) (internal quotation marks and citation omitted).

### A. Tax Records

Adelekan argues that the district court abused its discretion by admitting his personal tax records, which demonstrated that he failed to report any income that he received from the wire transfers that were alleged to be part of the charged fraud and money laundering scheme, because the evidence was highly prejudicial and not probative of guilt.  We disagree.

Although Federal Rule of Evidence 404(b) prohibits the admission of evidence of "any other crime, wrong, or act" to prove a defendant's character or criminal propensity, it permits the admission of such evidence to show, *inter alia*, a defendant's intent, knowledge, or absence of

---

[1] Adelekan's appeal was originally consolidated with the appeal of his co-defendant, Temitope Omotayo. The appeals were unconsolidated at the request of Omotayo's counsel. *See* Dkt. No. 97.

mistake. Fed. R. Evid. 404(b)(1), (2); *accord United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017). Thus, under this Circuit's "inclusionary approach," prior act evidence offered for any proper purpose is admissible so long as it is relevant to a disputed issue at trial and "the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 403.

Here, the district court acted well within its discretion in concluding that Adelekan's personal tax records were probative of his intent and the absence of mistake with respect to the charged fraud and money laundering conspiracies. As Adelekan acknowledges, his primary defense to the charged fraud was that he believed that the wire transfers were legitimate payments made in connection with his car business activities. *See* Appellant's Br. at 17 ("Mr. Adelekan asserted as his defense that his involvement with the charged conduct all related to his car business activities."). Thus, the tax records were properly introduced by the government to rebut the defense based on the theory that, if Adelekan believed the wire payments were for his car business, he would have reported them on his tax returns. *See United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995) ("The tax returns were obviously probative to refute [the] defense that the contested funds were legitimate compensation . . . ."); *see also United States v. Atuana*, 816 F. App'x 592, 595 (2d Cir. 2020) (summary order) (holding that "the district court reasonably concluded that [the defendant's] failure to file any tax returns for his several companies over the course of the conspiracy was probative of whether the businesses were legitimate"); *United States v. Bergstein*, 788 F. App'x 742, 745 (2d Cir. 2019) (summary order) (holding that the evidence that defendant did not report or pay taxes on the income from the allegedly fraudulent transactions "demonstrated [the defendant's] intent and absence of mistake, was relevant to his claim that his transactions were

4

legitimate, and was not unfairly prejudicial").

Although Adelekan asserts that his defense regarding his car business activities did not put his intent at issue, we are unpersuaded. To be sure, "when a defendant *unequivocally* relies on a defense that he did not do the charged act at all, evidence of other acts is not admissible for the purpose of proving the intent or knowledge with which he acted." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (alterations adopted) (emphasis added) (internal quotation marks and citation omitted). However, throughout the trial—including in the opening, cross-examinations, and summation—Adelekan's counsel repeatedly disputed that Adelekan had the requisite intent to commit fraud, including when advancing the defense that Adelekan believed the wire transfers were related to legitimate car payments. *See* Trial Tr. at 33 (stating in the opening that Adelekan "bought . . . cars at auction for shipment to Nigeria" and that, to pay for these cars, his Nigerian customers "requested that bank accounts be opened in the United States in order to facilitate the payment for these cars in U.S. dollars"); *see also id.* (arguing in the opening that the government would be "unable to prove beyond a reasonable doubt that [Adelekan] knowingly and intentionally joined in that scam that originated from Nigeria"); *id*. at 33–34 ("When all the evidence is in, you may feel that Sean Adelekan was too trusting. But, carelessness is not a crime."); *id*. at 566 (cross-examining government's cooperating witness about his investment in Adelekan's car business using money from a fraudulent wire transfer); *id*. at 814 (arguing in summation that government's evidence "failed to show that Mr. Adelekan was a knowing and intentional participant in any of the frauds"). Therefore, contrary to Adelekan's contention, he did not rely solely on a defense that he did not commit the crime and thereby remove the issue of his intent and knowledge from the case. *See Paulino*, 445 F.3d at 222 ("[A] defendant may not use ambiguity tactically, as in this case, by proposing to accept an instruction removing *mens rea* issues from consideration while at

5

the same time attempting to insinuate doubt on the issue in the jury's mind." (internal quotation marks and citation omitted)).

We find similarly unavailing Adelekan's contention that his personal tax records "proved nothing about the validity of the *business* income [he] said . . . was in his account transfers." Appellant's Br. at 17 (emphasis added). The government introduced evidence establishing that basic tax rules required Adelekan to report the income from his sole proprietorship on his personal tax returns. Therefore, his failure to do so with respect to the proceeds from the fraudulent transactions at issue was probative of his intent and lack of mistake.

Moreover, although the district court did not explicitly conduct the requisite balancing under Rule 403, a "mechanical recitation of the Rule 403 analysis is not required" so long as the court makes a "conscientious assessment of whether unfair prejudice substantially outweighs probative value." *Dupree*, 870 F.3d at 77 (internal quotation marks and citation omitted). Here, the district court heard Adelekan's objections before admitting his tax returns, but Adelekan made no persuasive argument that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, especially where the tax records were highly relevant on the critical issue of Adelekan's intent. *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (district court did not abuse its discretion by admitting prior act evidence without a formal Rule 403 balancing when "the court was made aware of the possible prejudicial effect of the evidence . . . through [defendant's] objections" and admitted the evidence to show intent or knowledge). Moreover, with respect to potential prejudice, the Rule 404(b) evidence was "no more inflammatory than the charges alleged in the indictment."[2] *United States v. Abu-Jihaad*, 630 F.3d

---

[2] Adelekan also faults the district court for not providing a limiting instruction. However, no such instruction was requested, and we find no plain error in the district court's failure to issue such an instruction

6

102, 133 (2d Cir. 2010); *see also Valenti*, 60 F.3d at 946 ("Any arguable prejudice to [the defendant] was *de minimis*: it strains credulity to think that the jury might have believed [the defendant] innocent of transporting stolen goods, but voted to convict him anyway just because he failed to report income on his tax returns.").

Accordingly, we discern no abuse of discretion in the admission of the tax records.[3]

## B. Testimony of IRS Employee

Adelekan contends that the district court abused its discretion by improperly allowing an IRS employee, Tom Bolus, to testify as a fact witness even though he offered certain tax opinions as to which he needed to be certified as an expert. We disagree.[4]

Relevant "fact testimony" is admissible under the Federal Rules of Evidence "so long as the witness has personal knowledge." *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013); *see also* Fed. R. Evid. 602. Moreover, opinion testimony from lay witnesses is admissible when it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "[L]ay opinion must be

---

sua sponte. *See United States v. Tarricone*, 996 F.2d 1414, 1421 (2d Cir. 1993) (noting, with respect to 404(b) evidence, "*if requested to do so*, the court must give an appropriate limiting instruction to the jury" (emphasis added)); *United States v. Benedetto*, 571 F.2d 1246, 1250 n.9 (2d Cir. 1978) (finding no plain error in failure to give limiting instruction on Rule 404(b) evidence).

[3] Because we conclude that the evidence was properly admitted under Rule 404(b), we need not address the district court's alternative finding that the evidence was admissible as direct evidence of the concealment of the source of funds in connection with the money laundering charge.

[4] As an initial matter, we find unpersuasive Adelekan's suggestion that the district court abused its discretion in finding that he received sufficient notice of Bolus's testimony and the tax records that would be introduced. The government produced the tax order to Adelekan more than a week before Bolus testified and produced the tax returns immediately after receiving them pursuant to that order days in advance of Bolus's testimony. In short, we conclude that Adelekan was provided sufficient notice of the tax records and Bolus's testimony. *See, e.g.*, *Valenti*, 60 F.3d at 945 (finding that reasonable notice was provided when wire transfers were produced four days before trial).

the product of reasoning processes familiar to the average person in everyday life," *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005), and must not "merely tell the jury what result to reach," *United States v. Johnson*, No. 22-1289, 2024 WL 4096459, at \*14 (2d Cir. Sept. 6, 2024) (internal quotation marks and citation omitted).

Here, Bolus authenticated and described Adelekan's tax records, and explained the basic tax reporting concepts that applied to an individual and sole proprietor with respect to the declaration of income on a personal tax return. In doing so, Bolus's testimony "was not based on specialized experience . . . nor did it involve a specialized reasoning process not readily understandable to the average juror." *Id.* at \*15 (internal quotation marks and citation omitted). Indeed, Bolus made clear that he was not a tax expert or an IRS agent and had no training or education in tax laws. *See, e.g.*, Trial Tr. at 638 ("I do not have training and education in tax laws . . . I'm just a basic IRS employee[.]"). Moreover, Adelekan did not contest in the district court, nor on appeal, the applicability or interpretation of the basic IRS rules regarding the reporting of income that Bolus briefly explained. Under these particular circumstances, the district court did not abuse its discretion in allowing this fact witness to reference these basic tax reporting rules in authenticating and describing Adelekan's records. *See Cuti*, 720 F.3d at 460 (holding that the district court did not abuse its discretion in allowing a fact witness to testify about "the accounting rules involved in the recognition of revenue from real estate concession transactions" where "those rules or their interpretation were not in question in th[e] case"); *see also Bergstein*, 788 F. App'x at 745 ("[T]he Internal Revenue Service agent did not improperly testify as an expert witness when he authenticated the tax documents in evidence, communicated the contents of [certain of the defendant's] tax returns to the jury, identified which required records the agency lacked, and explained certain basic concepts.").

8

## II.     Sentencing

Adelekan argues that the sentence imposed was procedurally unreasonable because the district court's finding that the intended loss from the offense was at least $9.5 million, for purposes of calculating the offense level under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), was unsupported by the record.  That intended loss amount increased his offense level by twenty levels under U.S.S.G. § 2B1.1(b)(1)(K), resulting in an advisory Guidelines range of 262 to 327 months' imprisonment.  The district court ultimately imposed a below-Guidelines sentence of 108 months' imprisonment.

"We review a sentence for procedural reasonableness under a deferential abuse-of-discretion standard." *United States v. Jesurum*, 819 F.3d 667, 670 (2d Cir. 2016) (internal quotation marks and citation omitted).  "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Singh*, 877 F.3d 107, 115 (2d Cir. 2017) (internal quotation marks and citation omitted).  A sentencing court need only make a "reasonable estimate of the loss" to apply U.S.S.G. § 2B1.1(b)(1)(K). *United States v. Rainford*, 110 F.4th 455, 476 (2d Cir. 2024) (internal quotation marks and citation omitted).

As a threshold matter, Adelekan has waived his challenge to the intended loss calculation by failing to object to that calculation at sentencing.  It is well settled that factual findings in the Pre-Sentence Report ("PSR") that were not disputed in the district court may not be challenged on appeal.  *See United States v. Rizzo*, 349 F.3d 94, 99 (2d Cir. 2003) ("[I]f a defendant fails to challenge factual matters contained in the presentence report at the time of sentencing, the

9

defendant waives the right to contest them on appeal."); *accord United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008). Here, the loss amount in excess of $9.5 million was set forth in the PSR, to which Adelekan raised no objection. Moreover, Adelekan explicitly acknowledged in his written sentencing submission that the intended loss amount of more than $9.5 million was correct. *See* App'x at 144 ("$9,500,000 is certainly a large number and based on the evidence [at] trial one cannot dispute that the intended loss amount in this case is slightly more than $9,500,000."); *see also id.* at 145 ("[Adelekan] cannot dispute that he can be held responsible for the entire intended amount due to conspiratorial liability and foreseeability."). In addition, at sentencing, Adelekan's counsel confirmed to the district court that Adelekan did not dispute that the applicable loss amount was more than $9.5 million, but rather argued that the corresponding Guidelines enhancement of twenty levels would result in a "disproportionately harsh sentence." App'x at 166. Because Adelekan failed to object to the factual finding regarding the loss amount, and even explicitly agreed to that finding in his written submission, he has waived any challenge to that factual finding on appeal. *Rizzo*, 349 F.3d at 99; *see also United States v. Johnson*, 553 F. App'x 78, 79 (2d Cir. 2014) (summary order) (holding that a defendant waived any challenge on appeal to the loss amount calculation, which was contained in the PSR, by failing to dispute that amount in the district court).

*          *          *

We have considered Adelekan's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10